[No. F012430. Fifth Dist. July 19, 1990.]

In re KRISTIN W. et al., Persons Coming Under the Juvenile Court Law.
MERCED COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
CHRISTOPHER W., Defendant and Appellant.

[No. F013275. Fifth Dist. July 19, 1990.]

CHRISTOPHER W., Petitioner, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
KRISTIN W. et al., Real Parties in Interest.

240

**COUNSEL**

Kimball J. P. Sargeant, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

Dennis L. Myers, County Counsel, and Allen R. Berrey, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Respondent Superior Court.

David M. Thompson, under appointment by the Court of Appeal, for Real Parties in Interest.

OPINION

FRANSON, P. J.—

STATEMENT OF THE CASE AND FACTS

On May 9, 1988, petitioner's three children, Kristin W., age ten, Tanya W., age eight, and Brandi W., age seven, were detained by the Merced County Human Services Agency (Agency). A petition filed May 10 alleged the children were without proper and effective parental care and control. Specifically, it was asserted the children were habitually tardy or absent from school and had a chronic problem with head lice and poor personal hygiene. Further, petitioner failed to clean the house after numerous warnings by child protective services and public health. The children's mother had left the family, and her whereabouts were unknown.

At the jurisdictional hearing on June 7, 1988, the court found the children were persons described in then Welfare and Institutions Code[1] section 300, subdivision (a)[2] and sustained the petition. This ruling was based on the children's poor school attendance record and unacceptable personal hygiene, the filthy condition of the home, and petitioner's failure to take advantage of the services that had been previously offered to alleviate these problems.

On June 28, 1988, the children were adjudged dependents of the court and placed in the home of their maternal grandmother. The disposition report did not include a specific reunification plan but provided "[t]he plan will be to provide Family Reunification Services. . . . [Petitioner] will be offered rehabilitation counseling and complete a parenting class as well as be able to show an ability to maintain an appropriate home for the children." The court directed the Agency to provide family reunification services without further elaboration. The court concluded by telling petitioner, "then you show us you can do what you say you can do and take care of the children properly, and it's likely they will be returned to you in a relatively short time."

Petitioner signed a child welfare social services plan/agreement with the Agency on August 8, 1988. Under this agreement, petitioner was to visit

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Before January 1, 1989, section 300, subdivision (a) gave jurisdiction to the juvenile court to adjudge a person to be a dependent child of the court, "[w]ho is in need of proper and effective parental care or control and has no parent or guardian . . . willing to exercise or capable of exercising such care or control . . . ."

weekly with his children for two hours, complete a parenting class, maintain a stable living situation, contact the social worker monthly, and notify the social worker of any changes in his living arrangements. The social worker was to visit petitioner in his home to see that it was safe, clean, and adequate for the children's needs. Petitioner completed the parenting class shortly after the agreement was signed.

At the six-month review hearing held December 20, 1988, the court continued the placement of the children with their grandmother. The court noted the improvement in the children had been "wonderful and vast." The report prepared for the review hearing stated that petitioner wanted his daughters back in his home but the home was recently found to be "far below the acceptable standards." The court decided to allow six more months of family reunification attempts and then to hold another hearing and, if needed, to move to permanency planning.

At the December 20 hearing, petitioner told the court that he had gone to a parenting class but did not know what else he was supposed to be doing. The court responded: "Well, sir, the biggest problem is your home. And you must make changes in your home and your own way of life before there will be thoughts about being serious about returning the children to you . . . . So, if you have doubts about what you are supposed to be doing, you need to contact the department and find out, and if you want some kind of services agreement, well that's fine. But you're the one who must make the changes, and nobody else is going to make them for you." Petitioner also requested an order to increase his visitation with the children beyond the current two hours a week. In response, the court stated: "I'm not going to try to run the mechanics of the matter. The biggest thing you need to do, as I've indicated, from what I read, is to work on yourself and your home, and maybe the rest will follow naturally. But it's going to be a difficult thing, I suppose, because how do you demonstrate you are doing well, when you have done what—when there's such a contrast between the way the children are now and the way they were when they were in your care."

On March 1, 1989, the children's grandmother died. The children had been left with a neighbor when the grandmother entered the hospital, and after her death they remained in that home. At about the same time, a new social worker, Brenda Henderson, was assigned to the case. Ms. Henderson prepared a new child welfare social services plan/agreement for petitioner to sign. Under this agreement, petitioner was required to: have a verifiable source of income; make regular child support payments; visit the children per the schedule arranged by the social worker; refrain from using legal or illegal drugs; obtain a psychological evaluation and follow the treatment recommendation of the evaluation; become involved in individual and fami-

ly counseling by May 1, 1989; obtain a drug and/or alcohol assessment and follow the treatment and rehabilitation recommendations of the evaluation; enroll in and complete a parenting class; and secure and maintain employment or attend an employment training program. This agreement was to remain in effect from March 15, 1989, until July 1, 1989. Petitioner refused to sign this agreement.

Petitioner had been picking his children up from school and visiting with them for two hours every Friday. Shortly before the six-month review hearing in December, the oldest child, Kristin, decided she did not want to visit with her father. Thereafter, petitioner picked up the two younger girls and returned to the grandmother's house for visitation. After the grandmother's death, Ms. Henderson required that visitation take place in the Agency offices. Ms. Henderson testified the children did not want to go with petitioner so she wanted to monitor the visits. Ms. Henderson stated in her written report the children were afraid of their father and did not approve of his lifestyle. Petitioner testified the children looked forward to his visits before their grandmother died, but shortly thereafter, did not want to visit with him at all. Petitioner visited with the children only four times at the Agency offices and has not seen them since May 1989.

In August 1988, petitioner began living with his girlfriend at a different residence. However, he kept paying rent on his other house for a while because he believed he was required to maintain that residence under the child welfare agreement. Ms. Henderson was unable to verify petitioner's address. Petitioner was not there when Ms. Henderson made home calls.

The 12-month review hearing was held June 26, 1989. The social worker's written report prepared for the hearing concluded, "it appears highly unlikely that the minors will be reunified with either parent as the mother's whereabouts remain unknown and the father has failed to demonstrate that he has the ability to provide adequate care for the minors." After testimony was given by Ms. Henderson and petitioner, the court interviewed the children with only counsel present. However, the children were not very communicative.

At the conclusion of the hearing, the court made the following observations: "I don't believe that [petitioner] has provided or secured any kind of a suitable home. I believe his own testimony has been that he's worked two months out of the last eight, probably ten. I don't believe that his relationship with his children has been very good for a number of months and certainly wasn't prior to the time these children—or at the time these children were detained.

"He tells me today that he had a good relationship with the maternal grandmother, visits were satisfactory, earlier reports are to the contrary. He refused to sign a continuation agreement, a new reunification services agreement because he believed he already complied with it . . . . But I think he's rather arbitrarily then refused to make a new agreement and I don't believe he's complied with the earlier one. He hasn't complied with any suggestion concerning counseling, and I think the children are uncomfortable around him. I don't think they're afraid of him, but I think they're uncomfortable.

"And I think [the children] are satisfied, happy being away from him, and I don't see there's any reasonable likelihood that [petitioner] is going to change his life style in the relatively near future. I think it's highly unlikely there will ever be a reunification. I think this past twelve, thirteen months has demonstrated that clearly and convincingly." The court then made the following orders: "The children are continued in the care, custody and control of the human services for suitable placement and are continued as dependent children. The agency is ordered to provide permanency planning services with the goal of adoption. And I do that because I believe it would be detrimental now to return the children to the care and custody of you, Mr. [W.]. And the County Counsel will proceed under [former section] 232 of the Civil Code if that is necessary and the agency will provide appropriate remedial medical and dental care and the services of clinical experts as required."

On July 11, 1989, petitioner filed a timely notice of appeal from the order "ordering Permanency Planning Services." On November 27, 1989, petitioner filed an opening brief requesting this court to independently review the entire record on appeal pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] to determine whether any arguable appellate issues existed. On January 2, 1990, petitioner filed a petition for extraordinary relief alleging that substantial and important rights of Petitioner are at risk for which petitioner has no speedy or adequate remedy at law, . . . [that] matters involving child custody and dependency receive statutory preference and expedited treatment because time is of the essence in determining the best interests of the child[ren]. A delay in resolving the issues raised here will have a detrimental impact on the minors . . . ."

On March 20, 1990, the writ petition and the appeal were consolidated for disposition with oral argument scheduled for June 8, 1990.

## DISCUSSION

I. *Petitioner's attacks on the parental termination orders should be determined by the writ petition and not by the appeal.*

Section 366.25 requires the juvenile court to conduct one or more hearings within certain time constraints "to make a determination regarding the

future status of the minor" where the court has previously entered a dispositional order removing the minor from the physical custody of the parents. (§ 366.25, subd. (a); *In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453].) The Legislature has very carefully detailed what findings the court must make at such a hearing. (*In re Joshua S.* (1986) 186 Cal.App.3d 147, 153 [230 Cal.Rptr. 437].) The court must first determine whether the minor is to be returned to the parent. It appears the county has the burden of proving the negative of this issue. (§ 366.2, subd. (e); *In re Joshua S., supra.*) If the child is not returned, the court must determine whether there is a substantial probability that the minor will be returned to the physical custody of the parent within six months. If so, the court must set another review hearing within six months. (§ 366.25, subd. (c).) However, if the court makes negative findings on both questions, it must develop a permanent plan for the child. (§ 366.25, subd. (d).)

In developing a permanent plan, if the court finds "that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to [former] Section 232 of the Civil Code" unless it finds certain conditions to exist. (§ 366.25, subd. (d)(1).) Before 1989, there was disagreement in the case law regarding whether such permanency planning orders were appealable. (*In re Eli F., supra*, 212 Cal.App.3d 228, 234.) ■ In an apparent attempt to clarify this issue, the Legislature added subdivision (j) to section 366.25, effective January 1, 1989. This subdivision provides: "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to [former] section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ." Section 366.25 applies to minors adjudged to be dependent children before January 1, 1989. (§ 366.25, subd. (i).) Further, subdivision (j) applies retroactively. (*In re Albert B.* (1989) 215 Cal.App.3d 361, 371 [263 Cal.Rptr. 694].)

However, section 366.25, subdivision (j) only precludes appeals from an order authorizing the filing of a parental termination action or initiating a guardianship proceeding. (*In re Eli F., supra*, 212 Cal.App.3d 228, 235-236.) Other "contemporaneous" orders made during a permanency planning hearing remain appealable pursuant to the general rule of section 395. (*Id.* at p. 236.)[3] Thus, it is only the challenges which are designed to over-

---

[3] Section 395 provides that an appeal may be taken from a judgment in a section 300 proceeding "in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . . The appeal shall have precedence over all other cases in the court to which the appeal is taken."

turn the court's order authorizing the filing of a petition to terminate parental rights that are not cognizable on appeal. (*Ibid.*)

As noted above, petitioner filed his opening brief in the appeal under *People* v. *Wende, supra,* 25 Cal.3d 436. All challenges to the juvenile court's orders are raised in the writ petition.

Here, the trial court expressly ordered the agency "to provide permanency planning services with the goal of adoption" and to "proceed under [former section] 232 of the Civil Code if that is necessary . . . ." These orders imply another order, i.e., that family reunification services be terminated. Petitioner challenges this implied order in attacking the trial court's decision to order permanency planning. Petitioner argues the trial court abused its discretion in refusing to order the continuation of family reunification efforts for an additional six months before going to permanency planning and that he was denied due process when the trial court based this ruling in part on his unemployment.

■ It might be argued that such an implied order should not be reviewable either by appeal or by petition for extraordinary relief. However, this approach is too narrow. An implied order can have the same adverse impact on a party as an express order. Thus, any order which is necessarily implied from a permanency planning order authorizing termination of parental rights should be reviewable either by appeal or by writ. (Cf. *Dunton* v. *United Assn. of Journeymen etc. of United States & Canada* (1988) 206 Cal.App.3d 44, 47 [253 Cal.Rptr. 374]; *In re Linda P.* (1987) 195 Cal.App.3d 99, 105 [240 Cal.Rptr. 474].)

■ Having determined that an implied order can be reviewed by the appellate court, it must be decided which method of review is appropriate in this case. The authorization order encompasses the implied order terminating family reunification services. Both permanency planning services with the goal of adoption and parental rights termination proceedings directly conflict with family reunification services. When a juvenile court has made the findings necessary to support such orders, it has necessarily rejected reunification. (See § 366.25, subd. (d).) Thus, petitioner's argument that the trial court abused its discretion in refusing to order the continuation of family reunification efforts for an additional six months constitutes a direct attack on the authorization order. Consequently, this issue is not reviewable on appeal under section 366.25, subdivision (j).

In addition, petitioner has directly attacked the authorization order on the ground that the court failed to make the required findings concerning

the adoptablility of the children. As a direct attack on the authorization order, this issue is also not cognizable on appeal.

■ Section 366.25, subdivision (j) states the nonappealable order *"may be the subject of review by extraordinary writ."* From this language it is unclear whether, despite the statutory grant of authority, the petitioner must also demonstrate the basic prerequisites for issuance of an extraordinary writ, i.e., a beneficial interest in the matter, the absence of an adequate legal remedy, and abuse of trial court discretion.[4] (Code Civ. Proc., §§ 1085, 1086; *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) We hold these requirements must be shown to obtain extraordinary relief under section 366.25, subdivision (j). (See 8 Witkin, Cal. Procedure, *op. cit. supra*, § 138 at pp. 779-780.) However, when the petition is filed by a parent, the first two requirements will undoubtedly be present. A parent is beneficially interested in the termination of his or her rights to custody and control of the child.

The absence of an adequate remedy at law is demonstrated by the fact that section 366.25, subdivision (j) removes any possibility of filing a direct appeal challenging the authorization order. (*Medford* v. *Superior Court* (1983) 140 Cal.App.3d 236, 239 [189 Cal.Rptr. 227].) Nor will the authorization order be adequately reviewable on an appeal taken from any subsequent appealable juvenile court orders. (Cf. *In re Jesse C.* (1989) 215 Cal.App.3d 1384, 1387-1388 [263 Cal.Rptr. 811].) Thus, the writ proceeding provided under subdivision (j) represents the only adequate appellate review available to the parties to challenge an authorization order. In enacting subdivision (j), the Legislature must have been cognizant of Code of Civil Procedure section 1086 which provides that "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Cf. *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) ■ Under these circumstances, we conclude where a petition challenging an authorization order shows an abuse of trial court discretion, the appellate court must exercise its discretion to proceed to adjudicate the merits of the petition either by issuing a peremptory writ with a written opinion, by issuing an alternative writ and order to show cause if needed, or by issuing an order to show cause. (Code Civ. Proc., § 1086; *In re Albert B., supra*, 215 Cal.App.3d 361, 373; cf. *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012 [269 Cal.Rptr. 720, 791 P.2d 290].) If the order to show cause issues, the matter will be adjudicated by a written opinion following oral argument. Thus, a thorough review of the record by the appellate court in

---

[4]The failure to file an adequate record to support the petition will also preclude extraordinary relief unless the appellate court decides to augment the record on its own motion. (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 159, pp. 796-797.)

the first instance is required to determine whether the petitioner has made a prima facie case for writ relief or whether the petition should be summarily denied. (Cf. *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 221 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Hagan* v. *Superior Court* (1960) 53 Cal.2d 498, 502, fn. 1 [2 Cal.Rptr. 288, 348 P.2d 896].)

■ Petitioner has also challenged the trial court's failure to exercise its jurisdiction concerning visitation (see pt. VI, *post*). This alleged error is reviewable on appeal. Although visitation was never ordered by the court, it was allowed informally by the Agency as part of the "reunification plan" on terms suitable to the Agency. A decision whether to grant visitation rights to a parent is independent of any decision authorizing the termination of parental rights. Visitation may be granted or continued to a parent during the time it takes to determine whether parental rights should be terminated. (See, e.g., § 366.26, subds. (c)(1)(A) and (c)(3), applicable to hearings terminating parental rights or establishing guardianship of minors adjudged dependent children after Jan. 1, 1989.) Because the granting of parental visitation rights is not inconsistent with a permanency planning order authorizing termination of parental rights, a visitation order is not within the parameters of section 366.25, subdivision (j) and thus is appealable under section 395.

■ Finally, petitioner has challenged the sufficiency of the reunification plan that was offered to him by the Agency after the July 1988 disposition hearing (see pt. V, *post*). This contention must be distinguished from petitioner's challenge to the order discontinuing reunification services at the permanency planning hearing. Although the alleged insufficiency of the reunification efforts which were offered to petitioner contributed to the issuance of the permanency planning order and, thus, arguably, is subsumed in that order, this allegation does not constitute a direct attack on the authorization order. Therefore, the issue concerning the insufficiency of the reunification services before the permanency planning decision was made is cognizable on appeal. (*In re Eli F., supra*, 212 Cal.App.3d at pp. 235-236.)

■ Thus, two issues raised in the petition are cognizable on appeal: the alleged insufficiency of the reunification plan and the court's failure to exercise its jurisdiction concerning visitation.[5] Nevertheless, they should be decided in the writ proceeding. Where, as here, the entire record of the proceedings is before the court, it is proper to review all the facts and render

---

[5] The trial court's alleged errors in this regard are of a continuing nature to the date of the permanency planning hearing. By analogy to the limitations period for continuing wrongs such as trespass or nuisance (see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 425, pp. 458-459), the time for filing an appeal from such a continuing error would commence upon the entry of the permanency planning order.

such relief as may be proper. (*Golden State Glass Corp.* v. *Superior Court* (1939) 13 Cal.2d 384, 389 [90 P.2d 75].) "Such a practice [writ review] would provide speedier and more effective relief . . .*" (*In re Danielle M.* (1989) 215 Cal.App.3d 1267, 1272 [264 Cal.Rptr. 247]) and accommodates the strong policy of expediting appellate review of all juvenile court orders affecting the welfare of minors. (§ 395; Cal. Rules of Court, rule 39.)

Our discussion about which issues are reviewable on appeal and which are reviewable by way of petition for extraordinary relief is not simply a theoretical exercise in appellate procedure. ■ If counsel for an aggrieved party relies solely on the possibility of review by writ petition and does not file a timely appeal from a contemporaneous appealable order made at the permanency planning hearing, his or her client may be permanently deprived of a fundamental right if the reviewing court *summarily* denies the writ petition, and review is not given thereafter by the Supreme Court. To avoid this possibility, diligent counsel should file both a timely notice of appeal and a writ petition seeking review of the orders made at the permanency planning hearing. This requires the preparation of an adequate record, including the transcripts of prior jurisdictional, disposition and review hearings. (See Cal. Rules of Court, rule 39.) Appellate counsel also should ask the client and trial counsel promptly for supporting documentary evidence and declarations to prevent unnecessary delay in obtaining expedited review of the permanency planning orders. Counsel should further request the appeal not be consolidated with the petition so as to allow the expeditious determination of the writ proceeding.

In the present case, by not filing the writ petition until six months after the notice of appeal was filed, the appeal went on the appellate track. If the writ petition had been filed promptly after the juvenile court permanency planning order was filed, this court could have held the appeal in abeyance until it decided whether to issue writ relief and, if so, the appeal would then have been mooted in all likelihood. If the writ had been denied without an opinion, the appeal would then have proceeded under the priority rules governing appeals from juvenile dependency orders. (Cal. Rules of Court, rule 39(e).) With the benefit of hindsight, this procedure would have shortened by several months the time required by this court to review the permanency planning orders.

II. *Because we granted review of the writ petition by calendaring it for argument, the appeal has been mooted, and Wende review is inappropriate.*

■ In *People* v. *Wende, supra,* 25 Cal.3d 436, the Supreme Court held the Court of Appeal is required "to conduct a review of the entire record

whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Id.* at p. 441.) *Wende* procedures apply to juvenile dependency proceedings. (*In re Brian B.* (1983) 141 Cal.App.3d 397, 398 [190 Cal.Rptr. 153].) However, "no *Wende* review is made if counsel's brief presents 'a substantive issue' which if resolved favorably to the appellant would result in either 'a reversal or a modification of the judgment.'" (*People* v. *Woodard* (1986) 184 Cal.App.3d 944, 946 [229 Cal.Rptr. 350].) In fact, appellate courts refuse to engage in a *Wende* review even where counsel only " ' "raises one or two frivolous issues, easily disposed of by the inspection of a few pages of transcript." ' " (*Ibid.*)

As noted above, petitioner filed both a *Wende* brief and a writ petition. The writ petition raises several substantive issues. Because we granted review of the writ petition, we are able to adjudicate all of petitioner's contentions in the writ proceeding; hence, a *Wende* review would be inappropriate. The fact the *Wende* brief is separate from the writ petition does not change this result where we have granted review of the petition; both the appeal and the writ proceeding pertain to the permanency planning orders.

III. *There is insufficient evidence to support the permanency planning order.*

In a permanency planning hearing culminating in an order for Civil Code former section 232 proceedings (now Welfare and Institutions Code section 366.26, applicable to children declared dependents after January 1, 1989), the Legislature requires three findings. Section 366.25, subdivision (c) requires the court to first determine whether the minor should be returned to his or her parent. The court must order the return of the minor to the physical custody of his or her parent unless it finds by a preponderance of the evidence that the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The probation department has the burden of establishing that detriment. However, the failure of the parent to participate regularly in any court-ordered treatment programs constitutes prima facie evidence of detriment. (§ 366.2, subd. (e).)

If the minor is not returned to his or her parent, the court must next determine whether there is a substantial probability that the minor will be returned to the physical custody of his or her parent within six months. (§ 366.25, subd. (c).) If the court determines there is such a probability, it must set another review hearing within six months. The mandatory reunification services may be extended for an additional six months although the services cannot exceed eighteen months. (§ 361.5, subd. (a).) If the court determines there is not a substantial probability the minor will be returned

to the parent's physical custody, it must adopt a permanent plan for the minor. (§ 366.25, subd. (d).)

Finally, in order to enable the minor to obtain a permanent home, the court must determine whether it is likely the minor can or will be adopted. (§ 366.25, subd. (d)(1).)

Petitioner alleges the court abused its discretion by not continuing reunification efforts for an additional six months before adopting a permanent plan. Petitioner contends the court ruled without any evidence concerning the condition of his home. Rather, he asserts the court focused almost exclusively on the children's progress in foster care. Petitioner further argues it was both improper and a denial of due process for the court to consider his employment status as a reason in support of the order referring the children to permanency planning. In light of the statutory mandates, petitioner is essentially arguing the evidence did not support the court's determination that there was not a substantial probability of returning the children to petitioner's custody within six months. Petitioner contends the order referring the case for permanency planning should be vacated and that this court should direct the trial court to enter a new order reinstating reunification. Petitioner is not requesting immediate physical custody of his daughters.

 Review of the findings made at a dependency review hearing is limited to whether those findings are supported by substantial evidence. (*In re Heather P.* (1988) 203 Cal.App.3d 1214, 1226 [250 Cal.Rptr. 468].) "All conflicts must be resolved in favor of the respondent and the reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court." (*In re Albert B., supra,* 215 Cal.App.3d 361, 375.) Issues of fact and credibility are questions for the trial court. (*In re Heather P., supra,* 203 Cal.App.3d 1214, 1226.)

 In this case, the dependency was based on the children's unacceptable personal hygiene and the filthy condition of petitioner's home. The purpose of dependency proceedings and reunification is to help eliminate problems which lead to or require dependency. (*In re Venita L.* (1987) 191 Cal.App.3d 1229, 1243 [236 Cal.Rptr. 859].) Since petitioner did not have custody of his children at the time of the 12-month review, the only problem he had control over was the condition of his home. However, there was no evidence presented on this issue.

At the time of the hearing, petitioner had moved and was living with his fiancée. The social worker made several attempts to visit the house, but petitioner was not home at those times. Thus, a social worker had not seen

petitioner's home since before the six-month review. Petitioner testified he had maintained and upgraded his home and it was suitable for the children. Nevertheless, without any evidence to support its conclusion, the court stated, "I don't believe that Mr. [W.] has provided or secured any kind of a reasonable home." This was error.

■ The court also supported its findings on the ground petitioner had only worked two months out of the last eight or ten months. However, petitioner's employment status was not one of the reasons for the dependency. Although the juvenile court can consider "new" problems, such "new" problems cannot be the basis for findings continuing the dependency unless those problems would sustain a jurisdictional finding. (*In re Venita L., supra*, 191 Cal.App.3d 1229, 1242-1243.) "Dependency proceedings should not be allowed to drift from major problem-solving circumstances to prolonged attempts to resolve shortcomings in the parental home which would *not cause dependency in the first place*." (*Id.* at p. 1243.) A court cannot lawfully deprive a parent of the custody of his children because the parent is unemployed. (*In re Danielle M., supra*, 215 Cal.App.3d 1267, 1271.) Therefore, it was error for the court to rely on petitioner's unemployment to support the permanency planning order.

■ Petitioner further objects to the trial court's almost exclusive focus on the children's improvement in foster care. At the six-month review, the court stated that the improvement had been "wonderful and vast" and recognized it was going to be difficult for petitioner to demonstrate that he was doing well when "there's such a contrast between the way the children are now and the way they were when they were in your care." At the 12-month review, the court concluded the children were satisfied and happy being away from petitioner.

Section 366.2 requires the child be returned to the parent unless the court finds the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the child. The fact the children are happy and satisfied being away from their parent is not equivalent to finding "a substantial risk of detriment" to their emotional well-being if returned to the parent. "The right of parents to raise their own children is so fundamental that termination of that right by the courts must be viewed as a drastic remedy to be applied only in extreme cases." (*In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1326 [255 Cal.Rptr. 498].) Although in dependency proceedings the juvenile court is acting on behalf of the child, the court should not impose its set of values as to what constitutes a " 'good home environment.' " (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 541 [184 Cal.Rptr. 778].) Thus, it was not appropriate for the juvenile court to justify its ruling

on the ground the children were "happy and satisfied" away from petitioner.

When the above factors relied on by the trial court are excluded, the only remaining reason given by the court for its order is that petitioner was uncooperative with the social worker because he refused to sign the new reunification agreement prepared by Ms. Henderson and did not comply with any suggestion concerning counseling. The court also stated it did not believe petitioner had complied with the earlier agreement. However, petitioner had completed the parenting class, and the court had no evidence concerning whether petitioner had complied with the other requirement, i.e., that he have a suitable home for the children. This reason alone is not sufficient to support the finding there was no substantial probability the children would be returned to petitioner's custody within six months. Therefore, the court's order referring the children to permanency planning must be reversed.

IV. *The trial court's failure to make adoptability findings was error.*

Section 366.25, subdivision (d)(1) requires the trial court to make a finding regarding whether it is likely the minor can or will be adopted before authorizing the governmental agency to proceed under Civil Code section 232. However, this finding need not always be express. (*In re Albert B., supra,* 215 Cal.App.3d 361, 374.) This court can imply a finding if there is substantial evidence to support it. (*In re Venita L., supra,* 191 Cal.App.3d 1229, 1239-1240.)

Here, an express finding was not made. Respondent contends a finding can be implied because the court referred the children to permanency planning with the goal of adoption. Further, the social worker stated in her report "[i]t is felt that these minors are adoptable and that they would benefit from a permanent plan." However, the social worker's opinion is the only evidence in the record on adoptability. The social worker testified she had not discussed adoption with the foster parents. Although there was no evidence presented that the children were not adoptable, aside from the social worker's opinion, there was no evidence presented that they were adoptable. If the children are not adopted by their foster parents, it might be difficult to place them because of their ages. Thus, the social worker's opinion alone should not be held sufficient to support an implied finding of adoptability in this case.

V. *Both the reunification plan and the reunification services provided to petitioner were inadequate.*

Petitioner contends the reunification plan was legally deficient, primarily because at the time the court ordered reunification services be

provided, a plan tailored to petitioner's needs had not been developed. Petitioner further alleges the services which were provided were inadequate.

Before any dispositional order in a dependency case is made, the probation officer or social worker is required to prepare a social study of the minor. (Cal. Rules of Court, rule 1376(b), amended and renumbered as rule 1455 effective July 1, 1989.) This study must include a recommended plan for family reunification if it advises the minor be removed from the home. (*Ibid.*) "The Advisory Committee comment to rule 1376(b) suggests that the plan ' . . . might include specific recommendations for improvements within the home, successful completion of therapy programs, or other conditions for returning the minor to the home. This will serve to put the family on notice as to what must be accomplished to reunite the family.' " (*In re John B.* (1984) 159 Cal.App.3d 268, 274 [205 Cal.Rptr. 321].) In the disposition order, the court must state the social study has been read and considered by the court and, where appropriate, the plan for family reunification has been discussed with the parents. (Cal. Rules of Court, former rule 1376(d).)

Section 361.5 requires that whenever a minor is removed from the parent's custody the court must order the probation officer to provide child welfare services to the parent for the purpose of facilitating reunification of the family. Further, the order for reunification services must provide for visitation between the parent and the minor. (§ 362.1.) Visitation must be as frequent as possible, consistent with the well-being of the minor. (*Ibid.*)

 This statutory scheme contemplates immediate and intensive support services to reunify a family where a dependency disposition removes a child from parental custody. (*In re John B., supra,* 159 Cal.App.3d 268, 274.) A good faith effort to develop and implement a family reunification plan is required. (*Id.* at p. 275.) A reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family.' " (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1458 [234 Cal.Rptr. 84].) This reunification plan is a crucial part of the dispositional order. (*In re Jamie M., supra,* 134 Cal.App.3d 530, 545.) In light of the mandatory language of the statutes and the rule, " 'failure to formulate an adequate reunification plan [has] been held to be reversible error under rule 1376(b).' " (*In re Michael S., supra,* 188 Cal.App.3d at p. 1458.)

 Here, a specific reunification plan was not ordered by the court. The social worker's disposition report recommended that petitioner "be offered rehabilitation counseling and complete a parenting class as well as be able to show an ability to maintain an appropriate home for the children." At the disposition hearing, no provision was made for visitation.

Thus, the court did not formulate a plan and did not inform petitioner what he had to accomplish to regain custody of his children.

Petitioner signed a voluntary service agreement with the Agency on August 8, 1988. This agreement required petitioner to provide an adequate home and to complete a parenting class. It further provided for visitation for two hours a week. However, even if this agreement is held to constitute a reunification plan, this plan was not adequately tailored to petitioner's needs.

The problems which led to the children's removal from petitioner's home included their poor personal hygiene and absences from school. However, nothing in the reunification plan addressed these problems. Further, except for the dirty condition of petitioner's home, the problems leading to the dependency could only have been resolved by petitioner having some responsibility for the care of the children. The plan's limitation on visitation prevented petitioner from demonstrating and improving his skills with respect to the care of the children.

At the six-month review, petitioner informed the court that he did not know what he was supposed to be doing. Petitioner further requested visitation be increased. The court responded that petitioner needed to contact the Agency if he had doubts about the conditions that had to be met, and he could get some sort of services agreement if he wanted. Regarding visitation, the court stated it was not going to try to run the mechanics of the matter. The court's failure to intervene under these circumstances was inconsistent with the requirement that the court formulate an adequate reunification plan. This was error.

Following the grandmother's death in March 1989, petitioner's relationship with his children deteriorated. This was nine months after the disposition hearing. In response, the social worker required visitation to take place at the Agency offices. However, rather than merely adding further restrictions to petitioner's contact with his children, the social worker should also have explored the reasons for this deterioration. (Cf. *In re Michael S., supra,* 188 Cal.App.3d 1448, 1464.)

The social worker also requested that petitioner sign a second services agreement in March 1989 which, as outlined above, added a substantial number of new requirements for reunification. Since this occurred nine months after the disposition, petitioner had only three months to comply with these requirements before the twelve-month review. Completion of these requirements within this time frame was an unreasonable condition to place on petitioner.

In sum, adequate reunification services were not provided to petitioner. Thus, an additional six months of reunification services is warranted during which the Agency should undertake a serious and objective assessment of petitioner's ability to successfully complete a reasonable reunification plan which includes opportunities for increased visitation with the children. (Cf. *In re Michael S., supra*, 188 Cal.App.3d 1448, 1468.)

VI. *The trial court failed to exercise its jurisdiction concerning visitation.*

■ As noted above, section 362.1 requires that an order placing a minor in foster care and ordering reunification services must provide for visitation between the parent and the minor. Here, the court ordered that family reunification services be provided but did not make any orders regarding visitation. Further, when petitioner requested an order increasing visitation, the court refused, stating it was not "going to run the mechanics of the matter." Petitioner contends the court's failure to make an order regarding visitation was error.

The juvenile court may properly delegate the administration of a visitation order to the social worker. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237 [255 Cal.Rptr. 344].) However, a visitation order granting the social worker complete and total discretion to determine whether or not visitation occurs is invalid. (*Ibid.*)

The absence of an order concerning visitation is akin to an order granting total discretion. Although common sense suggests reunification services would generally include visitation, section 362.1 specifically requires a visitation order when reunification services are ordered. Further, there could be situations where, despite an order to provide reunification services, the social worker in developing a plan determines that visitation is not appropriate. The Legislature has determined that such a decision must be made by the court. Thus, the trial court's failure to make a specific order concerning visitation was error.

DISPOSITION

The appeal, having been rendered moot, is dismissed.

Let a writ of mandate issue directing respondent superior court to vacate its permanency planning order and to reinstate another six-month

reunification plan as directed in this opinion. The juvenile court is also directed to consider immediate visitation of petitioner with his children and to make appropriate orders pertaining thereto.

Best, J., and Vartabedian, J., concurred.