Filed 3/5/13  Oscar M. v. Superior Court CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| OSCAR M., | F066178 |
| Petitioner, | |
| v. | (Super. Ct. No. 516444) |
| THE SUPERIOR COURT OF STANISLAUS COUNTY, | **O P I N I O N** |
| Respondent; | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, | |
| Real Party in Interest. | |

### THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Oscar M., in pro. per., for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

*Before Poochigian, Acting P.J., Detjen, J., and Franson, J.

The juvenile court denied petitioner Oscar M. reunification services under Welfare and Institutions Code section 361.5, subdivision (e)(1)[1] at a contested dispositional hearing in November 2012 as to his then one-month-old son because Oscar was incarcerated, serving a sentence in excess of the statutory reunification period. The juvenile court also set a section 366.26 hearing.

Oscar challenges the juvenile court's denial of services and setting orders in propria persona by filing an extraordinary writ petition. (Cal. Rules of Court, rule 8.452.) He contends his incarceration should not be a bar to reunification. We disagree and deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In October 2012, Oscar's girlfriend, Justina, gave birth to his son, the subject of this writ petition.[2] Justina and the baby tested positive for methamphetamine. Oscar was incarcerated and scheduled to be released in March 2014.

The Stanislaus County Community Services Agency (agency) was notified and a social worker interviewed Justina and Oscar. Justina stated she had been using methamphetamine for a long time, including during her pregnancy and was unprepared to care for the baby. Oscar also admitted to using drugs for a long time. In addition, he had an extensive criminal history, including vehicle theft, attempting to escape from jail, possession of controlled substances, violation of parole, and grand theft.

The agency filed a dependency petition on the baby's behalf and the juvenile court ordered him detained. The juvenile court continued the matter to November 2012 for a

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Justina did not file a writ petition.

2

jurisdictional/dispositional hearing (combined hearing). The agency placed the baby in foster care.

Meanwhile, the agency referred Justina for services, including a drug and alcohol assessment. In late October 2012, Justina entered an inpatient drug treatment facility. However, she left several days later against staff advice.

In addition, an agency social worker contacted the Public Safety Center where Oscar was housed to determine what services were available there for him. According to a deputy there, Alcoholics Anonymous classes and two programs, Stress Management and Breaking Barriers, were available at the facility. The social worker provided Oscar pamphlets to read and encouraged him to participate in any services or programs available to him.

In its report for the combined hearing, the agency recommended that the juvenile court deny Justina reunification services because of her continuing drug use (§ 361.5, subd. (b)(10), (11) & (13)) and Oscar because of his incarceration (§ 361.5, subd. (e)(1)). As to Oscar, the agency reported that he had been in and out of jail for many years with only short periods between incarcerations. The agency opined that he had little respect for the law and was unwilling or unable to refrain from criminal activity.

In November 2012, Oscar appeared at the contested and combined hearing represented by counsel. Justina and the social worker were the only witnesses. Following their testimony, Oscar's attorney made an offer of proof which was accepted that he completed the Breaking Barriers program in early November 2012 and applied to the home detention program. He expected to know within two to three weeks whether he was accepted for home detention. He requested that the juvenile court provide him reunification services but if it did not, he would file a petition to modify the juvenile court's order (§ 388) if the opportunity arose.

3

At the conclusion of the hearing, the juvenile court exercised its dependency jurisdiction, denied Justina reunification services under section 361.5, subdivision (b)(10) and (11) and Oscar under section 361.5, subdivision (e)(1), and set a section 366.26 hearing. This petition ensued.

**DISCUSSION**

Oscar contends that incarceration should not preclude him from receiving reunification services. In a sense, Oscar is correct. Incarceration alone does not preclude a parent from reunifying with a child and a parent should be afforded the opportunity to pursue reunification in a proper case. (§ 361.5, subd. (e)(1); *In re Luke L.* (1996) 44 Cal.App.4th 670, 681.) However, as we explain, there are other considerations that factor into the juvenile court's decision to offer an incarcerated parent reunification services.

As a general proposition, when the juvenile court removes a child from parental custody, it must provide the parent reunification services. (§ 361.5, subd. (a).) The duration of services is determined by the age of the child upon initial removal. (§ 361.5, subd. (a)(1)(A)-(C).) When, as here, a child is younger than three years old on the date of initial removal from the parent's physical custody, reunification services are presumptively limited to six months. (§ 361.5, subd. (a)(1)(B); *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.) "This strict time frame … is a recognition that a child's needs for a permanent and stable home cannot be postponed for an extended period without significant detriment. [Citations.]" (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 474 (*Joshua M.*).)

Notwithstanding the general mandate to provide reunification services, the Legislature has determined that attempts to facilitate reunification in certain situations do not serve and protect the minor's interests. (*Joshua M.*, *supra*, 66 Cal.App.4th at p. 467.) Accordingly, it enacted certain exceptions wherein the juvenile court may deny a parent

4

reunification services. One such exception is section 361.5, subdivision (e)(1), the basis upon which the juvenile court denied Oscar reunification services.

Section 361.5, subdivision (e)(1) provides, as relevant here:

"If the parent … is incarcerated …, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, … the nature of the crime …, the degree of detriment to the child if services are not offered … , the likelihood of the parent's discharge from incarceration … within the reunification time limitations described in [Section 361.5,] subdivision (a), and any other appropriate factors."

Here, the juvenile court did not expressly find that providing Oscar reunification services would be detrimental to the baby. However, we can imply such a finding if there is substantial evidence to support it. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 253.) Further, on appellate review of a juvenile court's factual determinations and exercise of discretion in a dependency matter, we must uphold the judgment if it is supported by substantial evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) In this case, we conclude substantial evidence supports a finding that services would be detrimental.

Oscar's son was born while Oscar was incarcerated. Consequently, they have had no contact and do not share a parent-child bond. Further, Oscar's projected release date of March 2014 precluded him from participating in reunification for the six-month period set by statute for a child like his son who was under the age of three years when initially detained from parental custody. Moreover, there was no guarantee that Oscar would be released on home detention sooner than March 2014. Even if he were released sooner, there was no reason to believe he would remain out of custody to reunify given his propensity for reoffending. Finally, given Oscar's son's age and lack of bond, it would not be detrimental to him not to reunify with Oscar. On the contrary, he would be more

5

likely to suffer detriment if he was deprived a permanent home while waiting for Oscar to be available for him.

Thus, as this record reflects, Oscar was not denied reunification services merely because he was incarcerated but because to offer him services would be detrimental to his son. We find no error and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.