Filed 2/23/15  In re M.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.R., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061693 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J246157, J246158) |
| v. | OPINION |
| E.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Regina A. Coleman, Principal Assistant County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant E.G. is the mother (mother) of two children, Mi.R., a boy born in March 2007, and Ma.R., a girl born in May 2008. Mother challenges the juvenile court's judgment of August 8, 2014, terminating her parental rights to the children. Specifically, mother argues insufficient evidence supports the court's finding that the children were likely to be adopted within a reasonable time. Mother also argues her appointed counsel rendered ineffective assistance when she failed to raise the beneficial parental relationship exception to the preference for adoption. For the reasons discussed below, we affirm the judgment.

### FACTS AND PROCEDURE

*Detention*

On September 28, 2012, San Bernardino County Children and Family Services (CFS) filed a Welfare & Institutions Code, section 300[1] petition for each of the children alleging as to mother that she allowed her boyfriend to hit Mi.R. on the back of the legs with a belt, which caused bruising, and that she was arrested on September 26, 2012, for inflicting corporal punishment on a child (Pen. Code, § 273d), which made it impossible for her to care for the children.

At the detention hearing held on October 1, 2012, the juvenile court ordered the children removed from mother, and from their father, who resided in Texas, and detained

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise indicated.

2

with the maternal grandmother.[2]  This placement was appropriate for the children because they had lived "all of their lives" with the maternal grandmother, except for the ten months immediately prior to the removal.  The court ordered mother to have one two-hour supervised visit with the children each week upon her release from custody.  The court ordered that mother's boyfriend have no contact with the children.

*Jurisdiction and Disposition*

At the jurisdiction and disposition hearing held on October 22, 2012, the juvenile court took jurisdiction over the children.  The court continued mother's weekly supervised visits and authorized the social worker to liberalize visitation as appropriate.

*Six-Month Review*

At the six-month review hearing held on April 22, 2013, the court found mother's progress in her case plan to be "moderate."  The court granted mother unsupervised visitation, once weekly for two hours, but ordered that it be at a location other than her current residence.  Mother was at that time living in the home of her boyfriend's mother.[3] The court continued reunification services and authorized the social worker to liberalize visitation to unsupervised overnights once mother obtained her own residence.  The court allowed mother to have overnight visits at the maternal grandmother's home.  The

---

[2]  The children's father was initially granted reunification services but these were terminated at the 12-month hearing after father stopped attending services consistently and stopped communicating with the social worker.

[3]  "Mother's boyfriend" or "boyfriend" refers to the perpetrator of the abuse that prompted this dependency.  Mother denied throughout the dependency that she remained

*[footnote continued on next page]*

3

concurrent plan at that time, as set forth in the status review report was legal guardianship with the maternal grandmother "due to the frequency with which mother visits and communicates with the children." Mother was visiting with the children weekly and spoke with them on the telephone daily.

*12-Month Review*

At the 12-month review hearing held on November 5, 2013, the court continued mother's reunification services and visitation as before, with authority for the social worker to liberalize to weekend visits. The concurrent plan set forth in the status review report was legal guardianship with the maternal grandmother. This was based on a Concurrent Planning Review conducted on October 2, 2013, and supported by a Concurrent Planning/Adoption assessment of the same date. Mother was making progress in her services and was visiting with the children overnight once per week at their placement in her mother's home. However, CFS was concerned that mother was continuing her relationship with the boyfriend who had abused the children, and in June 2013 CFS had to temporarily restrict mother's unsupervised visits when it was found she had been taking the children to see the boyfriend. The visits were reinstated unsupervised after mother agreed to have the visits in a place other than the home where she was living (the boyfriend's mother's home) and that the boyfriend would not be present. Mi.R. expressed apprehension about going on unsupervised visits.

---

*[footnote continued from previous page]*
in a romantic relationship with the boyfriend, although she continued to reside with his mother.

*18-Month Review*

At the 18-month review hearing held on March 27, 2014, the juvenile court terminated mother's reunification services and set a section 366.26 hearing for July 25, 2014.  Also at this hearing, CFS changed its recommendation to a permanent plan of adoption because the maternal grandmother stated she was willing to adopt the children.  In the status review report filed March 18, 2014, CFS had still been recommending legal guardianship with the maternal grandmother.  Mother was completing her services, but was still living with her boyfriend's mother.  Mother was visiting with the children regularly, but had to be cautioned against corporal punishment when the children revealed that she sometimes spanked them on the rear end with her hand.

*Section 388 Petition and Section 366.26 Hearing*

On July 18, 2014, mother filed a section 388 petition asking the court to either return the children to her custody or reinstate reunification services.  In the report prepared for the section 366.26 hearing, CFS reported that the maternal grandmother had been legally separated from her husband since October of 2007, and that she would need his consent to formally adopt the children.  In its response to mother's section 388 petition, CFS reported that Mother had obtained housing with her maternal uncle, but there was no room for the children.  Maternal relatives told the social worker that mother had been offered housing for herself and the children in Victorville, but that she had refused it as being "too far away."  Although mother continued to deny being in a relationship with the boyfriend, the maternal relatives believed that "too far away" was a reference to proximity to the boyfriend.  For these reasons CFS opposed the petition.

At the hearing held on August 8, 2014, the juvenile court denied mother's section 388 petition. Mother at that time admittedly had still not obtained appropriate housing. Over mother's objection, the court then terminated mother's parental rights, found it likely that the children would be adopted, and selected adoption as the children's permanent plan.

This appeal followed.

### DISCUSSION

1. *Likelihood of Adoption*

Mother argues insufficient evidence supports the juvenile court's finding that the children were likely to be adopted. Mother cited both the lack of evidence that the children were generally adoptable, and the legal impediment to adoption by the maternal grandmother in that she would need permission from her husband, from whom she had been legally separated for seven years. We find sufficient evidence that the children are generally adoptable.

The juvenile court cannot terminate parental rights unless it finds, "by a clear and convincing standard, that it is likely the child will be adopted . . . ." (Welf. & Inst. Code, § 366.26, subd. (c)(1).) "The finding of adoptability is reviewed under the substantial evidence test. [Citation.]" (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1290 [Fourth Dist., Div. Two].) "We review th[e adoptability] finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion. [Citation.]" (*Id*. at p. 1292.)

6

"'The issue of adoptability . . . focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]' [Citation.]" (*In re Zeth S*. (2003) 31 Cal.4th 396, 406.) "'"Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." [Citation.]' [Citation.]" (*In re I.I.* (2008) 168 Cal.App.4th 857, 870 [Fourth Dist., Div. Two].) "If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.]" (*In re Michael G*. (2012) 203 Cal.App.4th 580, 589.)

Here, as mother points out, the juvenile court did not specify the basis for its finding of adoptability, but noted that it had "read and considered the assessments prepared by the social worker." Mother first asserts that the *only* evidence before the court was the single paragraph contained in the section 366.26 report, dated July 25, 2014, entitled "Analysis of the Likelihood of Adoption and Proposed Permanent Plan"— "The children . . . are appropriate for adoption. The children are placed with maternal grandmother . . . who wishes to legalize her parental relationship with the children . . . . There is a mutual attachment between the children and the caregiver, and the children recognize her as a parental figure." Mother further contends that the social worker based

7

the assessment that the children were adoptable solely on their maternal grandmother's desire to adopt them. We disagree with both of these assertions.

First, this particular juvenile court judge had presided over each of the children's dependency hearings except for the 12-month review hearing on November 5, 2013 and so can be presumed to have read the corresponding status review reports. Further, the information needed to make the adoptability finding could be taken from the section 366.26 report as a whole. Thus, the court had before it much more evidence than the single paragraph that mother claims forms the entire basis for the adoptability finding. Second, this evidence shows that the children are generally adoptable, and thus mother's challenge to the court's adoptability finding, based on speculation that the grandmother might be unable to obtain permission from her husband to adopt the children, is unfounded.

The evidence as to the children's age, physical condition and emotional state is as follows. The children were ages six and seven on the date of the section 366.26 hearing. We find this to be a neutral or only slightly negative factor in considering their adoptability. This is because, although they are not in the most "desirable" under-three age range for adoption, neither are these two children comparable in age and numbers to the "older sibling group" that the court thought might be difficult to place in the case mother cites in her responsive brief—*In re Kristin W.* (1990) 222 Cal.App.3d 234, 253— in which the three children were ages eleven, nine and eight when the permanent plan was chosen. As to their physical condition, although their most recent medical checkup was from March 2013, at that time the children had no medical or dental concerns, and

8

each was developing appropriately for their age. Both children were doing well in school. Emotionally, the children were doing "well and are generally well behaved and happy" in the maternal grandmother's home. There is no evidence in the record that would indicate that either child is in any way unadoptable, in terms of physical health, educational achievement and emotional health. In fact, the evidence on the record, as discussed above, positively indicates the children are generally adoptable. Thus, mother has not met her burden to show the juvenile court's adoptability finding was based on insufficient evidence. Thus, we need not address mother's argument that grandmother might face a legal impediment to the proposed adoption.

2. *Ineffective Assistance of Counsel – Beneficial Parental Relationship Argument*

Mother also argues that mother's counsel was ineffective because she failed to raise the beneficial parental relationship exception to adoption on mother's behalf at the contested section 366.26 hearing.

Where, as here, the juvenile court has ordered parental rights terminated, a parent has the right to seek review of claims of incompetent assistance of counsel. (*In re Carrie M*. (2001) 90 Cal.App.4th 530, 535.) "'In general, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal. [Citations.] . . . [A]n ineffective assistance claim may be reviewed on direct appeal [only] where "there simply could be no satisfactory explanation" for trial counsel's action or inaction. [Citation.]' [Citations.] Usually, however, '[t]he establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial . . . . Action taken or not taken by counsel at a trial is

9

typically motivated by considerations not reflected in the record . . . . Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the writ petition. [Citation.]' [Citations.]" (*In re Darlice C*. (2003) 105 Cal.App.4th 459, 463.)

Here, it is not true that "there simply could be no satisfactory explanation" for counsel's decision not to argue the beneficial parental relationship exception to the preference for adoption at the section 366.26 hearing. As CFS points out in its responsive brief, counsel had just unsuccessfully made this argument in the section 388 petition, in which counsel contended "it would be in the best interest of the minors to be raised by their biological mother as there is a significant bond between the mother and her children." Counsel could justifiably have believed it would be futile to make the exact same argument during the section 366.26 hearing, which was held immediately after the court denied the section 388 petition. In addition, the children were going to be adopted by mother's own mother, who throughout the dependency had allowed mother considerable in-person access to the children, including weekly overnight visits. As CFS states in the section 366.26 report "As this is an adoption by a biological family member, the children are also able to maintain contact with various extended family members." Given these two factors, mother has not established that counsel could have had no valid reason for not formally raising the beneficial parental relationship exception, and thus mother should properly have brought this argument in a petition for writ of habeas corpus.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

McKINSTER
J.

11