[No. A027692. First Dist., Div. One. Jan. 27, 1986.]

In re LISA M., a Minor.
SANTA CLARA DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
CECILIA M., Objector and Appellant.

**COUNSEL**

Leo Himmelsbach, District Attorney, and Robert J. Masterson, Deputy District Attorney for Petitioner and Respondent and Minor.

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Michael Pescetta, Deputy State Public Defender, for Objector and Appellant.

**OPINION**

**RACANELLI, P. J.**—In this appeal we must decide whether the failure to appoint a guardian ad litem to represent the interests of a mentally retarded mother compels reversal of certain orders of the juvenile court in a dependency proceeding. For the reasons explained, we conclude the error does not require reversal.

### BACKGROUND

The procedural and factual background is essentially uncontroverted: Cecilia M. is mentally retarded and emotionally disturbed. She lives with her parents, Tony and Connie M. In 1977, at the age of 22, Cecilia gave birth to a daughter, Lisa. The father of the child is unknown.

In January 1981 dependency proceedings were instituted to declare Lisa a dependent child of the court on the grounds that there was no parent

capable of exercising parental care and control and that the home was unfit by reason of depravity. (Welf. & Inst. Code, § 300, subds. (a), (d).)[1]

At the jurisdictional hearing held on March 26, 1981, Cecilia was represented by the public defender. Her mother, Connie M., and her doctor, Dr. Goldstein, were also present. After questioning Dr. Goldstein and Cecilia herself, the court concluded Cecilia was not competent to understand the nature of the proceedings. The public defender conceded there was no dispute that Cecilia was unable to care for her child.

Pursuant to a negotiated disposition, the public defender agreed to admit the allegations of the section 300, subdivision (a) petition (lack of parental care and control); the section 300, subdivision (d) petition was dismissed. The probation officer then testified that the section 300, subdivision (a) petition was true. The juvenile court sustained the petition and found Lisa to be a dependent child of the court. Lisa was then placed in a foster home.

On April 23, 1981, the court conducted a hearing relating to the proper disposition of Lisa. Cecilia was again represented by the public defender, and Connie M. was represented by private counsel. Connie M. sought to remove Lisa from foster care in favor of placement in the home of a relative: either her own home or that of her son and his wife, Manuel and Debbie M.

The probation reports, however, found the homes unsatisfactory because there was no assurance that the grandfather, Tony M., would be kept away from Lisa.[2] The juvenile court ultimately ordered Lisa placed with her great-uncle and aunt, Ernest and Claudia M., in Modesto. *No appeal was taken from the dependency proceedings and orders.*

In 1982 and 1983 status review hearings were held at which Lisa was continued as a dependent child with placement continued in the home of her paternal great-uncle and aunt.

On September 30, 1983, the juvenile court referee held another dependency status review hearing (§§ 366, 366.2) and a permanency planning hearing concerning Lisa's future status (§ 366.25). At this hearing, both Cecilia and her parents, Connie and Tony M., were represented by private

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]The authorities had originally become aware of Lisa's situation after the sheriff's office responded to a domestic disturbance at the home. The deputies found Tony M. drunk; his other daughters, Gloria and Caroline, accused him of having sexual intercourse with Cecilia.

counsel. Counsel argued that Lisa should be returned to the home of Connie and Tony M. where Cecilia also resided.[3]

The court concluded Lisa should not be returned to the physical custody of her mother and continued Lisa's status as a dependent child with placement to remain with the great-uncle and aunt. The court also ordered the county counsel to initiate parental termination proceedings pursuant to Civil Code section 232. (§ 366.25, subd. (d).) No appeal was taken from the dependency or status review order. (We have since determined that the order of reference to initiate proceedings to terminate parental control is not itself appealable. (See *In re Candy S.* (1985) 176 Cal.App.3d 329 [222 Cal.Rptr. 43].))

On March 30, 1984, a further dependency review and permanency planning hearing was held. Cecilia and Connie M. were again represented by counsel. Again Connie M. sought to return Lisa to the family home. The juvenile court referee continued Lisa's placement with Ernest and Claudia M. and again ordered the county counsel to initiate Civil Code section 232 termination proceedings. Cecilia has purportedly appealed from *that* order.

At the request of the district attorney, we have taken judicial notice of the superior court file which reveals that subsequent to the March 30th order, parental termination proceedings pursuant to Civil Code section 232 were commenced. Cecilia was therein represented by the public defender. There was no dispute that Lisa should be declared free of Cecilia's custody and control; the only contested issue was whether Cecilia and Tony and Connie M. would be allowed visitation. (An agreement was ultimately reached giving each of them visitation rights.) The public defender, representing Cecilia, submitted the Civil Code section 232 petition on the social and medical reports.

On April 5, 1985, the court sustained the petition and declared Lisa free from the custody and control of her mother, Cecilia. The matter was thereafter referred to the Department of Social Services for adoptive placement. No appeal was taken from that order which has since become final.

## DISCUSSION

■ Cecilia contends the court erred in failing to appoint a guardian ad litem for her during the dependency proceedings. We agree. Section 372 of the Code of Civil Procedure provides that "[w]hen . . . an incompetent

---

[3]At the hearing Caroline M., Cecilia's sister, retracted her 1981 accusations of molestation by Tony M. Connie M. testified she was the "legal guardian" of Cecilia.

person . . . is a party, such person shall appear either by a guardian or conservator . . . or by a guardian ad litem appointed by the court in which the action or proceeding is pending . . . ."

A request for appointment of a guardian may be made by "a relative or friend of such insane or incompetent person, or . . . any other party to the action or proceeding, or by the court on its own motion." (Code Civ. Proc., § 373, subd. (c).) Thus, it has been held that when plaintiff has knowledge of the defendant's incompetency, the plaintiff (seeking a default judgment) has a duty to disclose such facts in order that a guardian be appointed. (See *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 577 [122 P.2d 564, 140 A.L.R. 1328].) By analogy, when the trial court already has knowledge of the defendant's incompetency, the trial court has an obligation to appoint a guardian ad litem sua sponte. (See *Jeffrey S. II* v. *Jeffrey S.* (1977) 76 Cal.App.3d 65, 70 [142 Cal.Rptr. 625].)

In the present case, the juvenile court made an express finding that Cecilia was incapable of understanding the dependency proceedings. That knowledge alone should have triggered some action—either by Cecilia's own counsel, her parents, the district attorney or by the court itself—to obtain appointment of a guardian ad litem, a procedure which, regrettably, was overlooked.

The question in this appeal, however, is the nature of the remedy Cecilia is entitled to at this stage of the proceedings. By this appeal she asks this court to reverse *all* orders issued by the juvenile court. But this court lacks jurisdiction to do so. All orders except the March 30th order are now final; and no appeal was taken from any of the earlier orders. This court no longer retains jurisdiction to act upon any order except the March 30, 1984, dependency review order.

Yet, although that order constitutes an appealable "order after judgment" (§ 395; Cal. Rules of Court, rule 1396(b)), in reality it operates as an interim order which merely continued Lisa's placement with her great-aunt and uncle while simultaneously initiating section 232 proceedings. Even if this court were to reverse the March 30th order, such disposition would be meaningless in view of the superseding 232 proceedings culminating in a judgment of parental termination. Contrary to Cecilia's insistent request (renewed in her postargument letter brief), the March 30th order has been rendered moot.

Cecilia's remedy is not by way of appeal of such interim order but rather by seeking to disaffirm the critical parental termination order and its foundational dependency determinations. (*Gouanillou* v. *Industrial Acc. Com.*

(1920) 184 Cal. 418, 420 [193 P. 937]; *Jeffrey S. II* v. *Jeffrey S., supra,* 76 Cal.App.3d 65; *Keane* v. *Penha* (1946) 76 Cal.App.2d 693, 696 [173 P.2d 835]; *Abbott* v. *Industrial Acc. Com.* (1936) 12 Cal.App.2d 478 [55 P.2d 927]; *Hughes* v. *Quackenbush* (1934) 1 Cal.App.2d 349, 362 [37 P.2d 99].) The appropriate procedure to challenge such final order and judgment is either a motion to vacate or set aside the judgment addressed to the trial court[4] (see 4 Witkin, Cal. Procedure *op. cit., supra,* Pleading, § 70, pp. 105-106) or, alternatively, the filing of an independent action in equity to set aside the judgment. (*Olivera* v. *Grace, supra,* 19 Cal.2d at pp. 575-577.) What Cecilia cannot now do is seek to confer upon this court jurisdiction to affect appealable orders from which no appeal was taken.[5]

The appeal is dismissed.

Elkington, J., and Newsom, J., concurred.

---

[4]Ordinarily, a motion to vacate the judgment may be brought at any time; the usual time restrictions do not apply. (See *Olivera* v. *Grace, supra,* 19 Cal.2d at pp. 573-574; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 184, pp. 585-586.) The right to disaffirm may be lost, however, if the unrepresented person is guilty of laches. (*Childs* v. *Lanterman* (1894) 103 Cal. 387, 391-392 [37 P. 382]; *Hughes* v. *Quackenbush, supra,* 1 Cal.App.2d at pp. 362-363.) However, because the failure to appoint a guardian ad litem is a mere irregularity, the judgment will not be set aside unless a different result would have been probable had the error not occurred. (Code Civ. Proc., § 475; *In re Cahill* (1887) 74 Cal. 52, 58 [15 P. 364]; *Pacific Coast etc. Bank* v. *Clausen* (1937) 8 Cal.2d 364, 366 [65 P.2d 352]; see also *Olivera* v. *Grace, supra,* 19 Cal.2d at pp. 578-579; *King* v. *Wilson* (1931) 116 Cal.App. 191, 194 [2 P.2d 833].) Thus, when the defendant has no available defense to the action, the trial court need not set aside the judgment. (*Pacific Coast etc. Bank* v. *Clausen, supra,* 8 Cal.2d 364.) Also, the fact that the person was represented by counsel in the proceedings must be considered. (See *Childs* v. *Lanterman, supra,* 103 Cal. at pp. 390-391; *King* v. *Wilson, supra,* 116 Cal.App. at p. 195.) In the event Cecilia brings such a motion, the trial court will have to decide whether the appointment of a guardian ad litem at the underlying dependency proceedings or parental termination proceedings would likely have resulted in a different outcome.

[5]At oral argument counsel argued that without an order from this court compelling appointment of a guardian ad litem in the dependency proceedings, there will be no one to act to disaffirm. We reiterate that Code of Civil Procedure section 373, subdivision (c) expressly authorizes a request for appointment of a guardian by a relative or friend of the incompetent person. Such request may be made even before the action is commenced. (See *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 11-13 [118 Cal.Rptr. 21, 529 P.2d 53]; 4 Witkin, Cal. Procedure, *op. cit. supra,* Pleading, §§ 61-62, pp. 100-101.) There is nothing to prevent a concerned person from requesting the trial court to appoint a guardian ad litem in order to challenge properly earlier orders affecting the interests of such incompetent person.