195 Cal.App.3d 99 (1987)
240 Cal. Rptr. 474
In re LINDA P., a Person Coming Under the Juvenile Court Law.
VENTURA COUNTY PUBLIC SOCIAL SERVICES AGENCY, Plaintiff and Respondent,
v.
PAL P., Defendant and Appellant.
Docket No. B022695.
Court of Appeals of California, Second District, Division Six.
September 29, 1987.
*100 COUNSEL
Theodore S. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.
James L. McBride, County Counsel, Harry E. Barnes and Mary C. Ward, Assistant County Counsel, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
WILLARD, J.[*]
Appellant is the father of Linda P., an infant dependent of the Ventura County Superior Court. He appeals from an order dated *101 August 1, 1986, as a result of a review and permanency planning hearing. (Welf. & Inst. Code, § 366.25.)[1] The court made findings and 12 numbered "orders." Appellant's principal complaint is directed to three of the "orders," those continuing Linda as a dependent pursuant to subdivision (a) of section 300, continuing her in foster care placement, and directing the county counsel to initiate proceedings pursuant to Civil Code section 232 to have her parental custody permanently terminated. The minor's mother has not appealed.
While the appeal was pending, a judgment was rendered and became final in a separate proceeding terminating the parents' custody pursuant to Civil Code section 232. We hold that the finality of that judgment does not render this appeal moot. On the merits of this appeal we modify the order so that it authorizes instead of directs action by the county counsel, and as so modified we affirm.

FACTS
Linda was born on June 6, 1985, at Camarillo State Hospital, where her mother was a mental patient. The mother suffers from a chronic mental illness which renders her incapable of caring for Linda. Appellant is Linda's father and desires to have her custody. He and Linda's mother have lived together from time to time, but never have been married to each other.
The Public Social Services Agency of Ventura County (hereinafter PSSA) on June 10, 1985, filed a petition to have Linda adjudicated a dependent child pursuant to section 300, subdivision (a), alleging that Linda "is in need of proper and effective parent care and control and has no parent willing or capable of exercising such care and control...." The following day Linda was ordered detained at a hearing not attended by appellant and of which he had no notice. The merits of the petition were considered at a hearing held July 8, 1985, which both parents attended. The trial judge told the parents that they had the right to be represented by an attorney, and that if they could not afford to pay an attorney one would be appointed to represent them at no cost to them. When asked directly if he would like to have an attorney appointed to represent him, appellant gave no direct answer, but said he would like to talk to the social worker and ascertain her recommendations. Appellant then read the social worker's report. It stated, among other things, that the parents planned to move into a rented room on July 7, that they desired to have custody of their child, and that they were cooperative and making progress toward the goal of reunification. It recommended *102 that the court find that it would be detrimental to return Linda to the custody of her parents, that custody be removed from the parents and be vested in PSSA for placement of Linda in a suitable foster home, that PSSA provide family reunification services to the minor and to the parents to facilitate reunification within 12 months, that the matter be reviewed in approximately 4 months, and that the court advise those present of "[t]he fact that pursuant to Section 366.25 of the Welfare and Institutions Code, a permanency planning hearing will be held if the child cannot be returned home by the next review hearing, and parental rights may be permanently terminated pursuant to California Civil Code Section 232 so the minor may be adopted...."
After reading the report appellant stated that he agreed with everything in it, including continued placement of Linda in a foster home. The judge then renewed his inquiry as to whether appellant desired an attorney. Appellant replied that he would like to proceed without one. The petition was then sustained and the orders proposed in the PSSA report were made.
A review hearing was held on December 16, 1985, at which time a public defender was appointed as attorney for the parents. A new PSSA report was read and considered. It showed that appellant had been in jail for six weeks during the five months since the original hearing, that the mother had not improved her parenting skills, that appellant had not located suitable housing for the family (he and the child's mother had been living in an automobile parked at Lake Casitas), that appellant had been earning about $100 a month at odd jobs, and that he had enlisted in the National Guard and soon would be going to Oklahoma for sixteen weeks of training. At the conclusion of the hearing the court made several findings, including the following: "3.) Pursuant to Welfare and Institutions Code Section 366.2(d), return of the minor to the physical custody of her parents would create a substantial risk of detriment to the physical and emotional well-being of the minor; ... 6.) The parents of the minor have not complied with the case plan in the following manner: 1) The mother has a history of mental illness and is unable to benefit from parenting training; 2) mother's attendance at Partial Day Care has been sporadic and she has not followed the recommendations of Mental Health; 3) the father has failed to provide suitable housing for the family; 4) the parents have made no progress in improving parenting skills; and, 5) the father's unreasonable distrust and suspicion prevent compliance; [¶] 7.) The extent of progress to alleviate the causes necessitating placement in foster care is nil...." The minor's dependency status was continued, the parents were ordered to comply with and participate in the service plan developed by PSSA, and the matter was set for review and permanency planning in approximately five months.
*103 The review and permanency planning hearing was commenced on July 30 and concluded the following day. The public defender continued to represent the mother, but an independent counsel had been appointed for appellant and was present to represent him. The mother testified briefly and several documents were received in evidence, including an extensive report from PSSA and a report from a private practicing psychologist who had been retained by appellant. The latter report indicated that appellant had completed basic training in Oklahoma and thereafter had been living with his mother and then with his sister. (Linda's mother was an in-patient at the Ventura County Mental Health facilities.) The report indicated that appellant desired to have custody of his daughter, and that he gave no indication of mental disorder. Psychological tests had shown, however, a likelihood that without psychological counseling appellant would engage in passive-aggressive maneuvers with others, including PSSA and the court. It concluded that appellant had the potential to learn how to care for a young child, but that he was neither organized nor consistent in actions which would result in his obtaining Linda's custody. The psychologist recommended that Linda remain in the court's custody for the next six months with placement in the home of the foster parents.
PSSA presented a report at the July hearing. It reviewed the past history. In an addendum to the report PSSA states: "REASSESSMENT: [¶] In summary, the half-hour visits have not served to develop a relationship between the minor and her father. There is no relationship to develop. Rather, the visits appear to disrupt the minor's stable environment. [¶] The mother continues to experience a psychotic episode and is expected to be transferred out of the County to a locked facility when space becomes available. She is under conservatorship. [¶] The father continues his irresponsible, immature, unreliable behavior. He does not take responsibility for that behavior, nor understand the impact on others of his behavior. His style is to appear agreeable to a request or order, not follow through, and not inform others of his decisions. He seems unable to prioritize this baby's needs over his own needs. [¶] At issue in this matter are the parents' ability to: (1) demonstrate the capacity to care for and parent this infant; (2) utilize reunification services provided on a time limited basis to assist the parents; (3) demonstrate the ability to provide permanency in living arrangements; (4) establish parent/child relationship; and (5) demonstrate stability of self and of situation and to maintain a stable environment over time. [¶] After 13 months there is no evidence that any of the above conditions exist. Intent is not reflected in behavior. [¶] Parents' activities and behavior are documented in the court report and summarized here: [¶] - Removed mother from board and care. [¶] - Resided at a campground, sleeping in an automobile during the winter months. [¶] - The father enlisted during reunification, removing himself from the reunification process. [¶] - No steady or ongoing *104 employment at any time (unemployed until January; absent from January - May; two jobs since May). [¶] - Declined or refused assistance or referrals. [¶] - No self-initiated contact with PSSA. [¶] - Did not keep PSSA apprised of changes in whereabouts, plans, appointments, etc. [¶] - No improvement or interest in parenting skills as a result of individual parenting lessons. [¶] - Participation in visits with child developed no parent/child relationship. [¶] Abandoned infant for four months by leaving the State. [¶] - Left no mailing address. [¶] - No inquiries to PSSA about the child's well-being during absence. [¶] - Left the State without taking Court-ordered psychological evaluation. [¶] - Did not keep second Court-ordered PSSA arranged appointment after Permanency Planning Hearing was continued for that purpose. [¶] - Did not attempt to meet the objectives of the service plan within the legal time frame. [¶] For the above-stated reasons the return of the minor to either parent would place the minor at substantial risk of detriment to her physical and emotional well-being."
The court, after an overnight recess to consider the evidence, made the order that is the subject of this appeal. Respondent has recently asked us to take judicial notice of a Ventura County Superior Court order entered April 16, 1987, declaring Linda free from parental custody pursuant to Civil Code section 232.

DISCUSSION

I
(1) We consider first the contention of respondent that the appeal is premature as to that part of the order that directs the county counsel to commence proceedings under Civil Code section 232 seeking permanent termination of parental custody. Respondent relies on In re Candy S. (1985) 176 Cal. App.3d 329 [222 Cal. Rptr. 43], in which the First District Court of Appeal did in fact so hold, stating: "We are of the opinion that no appeal lies from such a `reference' to the State Department of Social Services for initiation of a section 232 action. It is only when a party is `aggrieved' by a judgment or order that he or she may appeal. (Code Civ. Proc., § 902.) For a valid appeal one must be injuriously affected by the court's ruling in an immediate and substantial manner, and not as a nominal or remote consequence." (At p. 331; see In re Lisa M. (1986) 177 Cal. App.3d 915 [225 Cal. Rptr. 7], citing and approving In re Candy S.)
Recently we considered and rejected this contention. (In re Lorenzo T. (1987) 190 Cal. App.3d 888 [235 Cal. Rptr. 680].) We found the reasoning in In re Candy S., supra, unpersuasive. Our holding was consistent with In re Joshua S. (1986) 186 Cal. App.3d 147 [230 Cal. Rptr. 437].
*105 Here we have no express order terminating unification efforts. We do, however, have findings that there has been no progress to alleviate the causes necessitating placement in foster care, that there is no substantial probability that the minor will be returned home within six months, and that it is likely that the minor will be placed for adoption within five months and in fact be adopted. These findings, together with the order to the county counsel to institute proceedings under Civil Code section 232, effectively cut off reunification efforts. In addition, dependency is continued. These findings and orders, taken together, certainly aggrieve the parents. There is no good reason why an exception to the appealability of the order should be found to exist.

II
(2) We do hereby take judicial notice of the 1987 order terminating parental custody pursuant to Civil Code section 232. Respondent, at oral argument, suggests that such order renders this appeal moot. In a similar situation it was so held. (In re Lisa M., supra, 177 Cal. App.3d 915, 919.) The Lisa M. opinion states that the dependency order operates only as an interim order and that the parents' remedy is not by appeal therefrom but by either a motion to vacate the judgment terminating custody or by an independent action in equity to set it aside. (At pp. 919-920.)
We are not disposed to follow Lisa M. As indicated in In re Lorenzo T., supra, 190 Cal. App.3d at page 893, the aggrieved parties "would be precluded in the superior court Civil Code section 232 proceedings, or on an appeal from those proceedings, from alleging any error the court made at the permanency planning hearing, e.g., not ordering legal guardianship in lieu of adoption. (In re Clarence I. (1986) 180 Cal. App.3d 279, 282 [225 Cal. Rptr. 466].)"
If such a collateral attack is not available in the parental custody proceeding, it surely would not be available in a collateral attack on that proceeding. Furthermore, such indirect proceedings would be far more cumbersome than direct appeal from the dependency proceeding and would involve the uncertainty of procedures not provided by statute or court rule.
Dependency proceedings are closely related to subsequent actions to terminate parental custody of the same child. Error in the former may undermine the foundation for the latter. The fact that a parental custody decision has become final should not preclude review of a significant basis for that decision. If the basis is found by direct appeal to be faulty, then equitable or other nonstatutory remedies may be appropriate to attack the final judgment terminating parental custody. (Cf. In re Lisa M., supra, 177 *106 Cal. App.3d 915.) This, however, is an issue not before us in this appeal. We hold only that finality of a judgment pursuant to Civil Code section 232 terminating parental custody does not render moot the appeal from an order in prior dependency proceedings continuing dependency and authorizing institution of proceedings under Civil Code section 232.

III-VI[*]
.... .... .... .... .... .
We note that the order of August 1, 1986, directs the county counsel to initiate action to declare the minor permanently free from the custody and control of the parents pursuant to section 232 of the Civil Code. Subdivision (d) of section 366.25 states that the court shall "authorize" such action. Item 1 of the order dated August 1, 1986, should be modified to read as follows: "County Counsel is hereby authorized to initiate an action to declare the minor permanently free from the custody and control of the parents pursuant to section 232 of the Civil Code." We hereby make that modification.
The order appealed from, as modified, is affirmed. Each party shall bear its own costs on appeal.
Stone, P.J., and Gilbert, J., concurred.
NOTES
[*] Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts III-VI.
[*] Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[*] See footnote, ante, page 99.