Filed 4/30/26  In re I.V. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re I.V., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.A.,<br><br>Defendant and Appellant. | G066212<br><br>(Super. Ct. No. 24DP0946)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Robert Goodkin, Judge. Affirmed.

Catherine L. W. Markel, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsels, for Plaintiff and Respondent.

No appearance for Minor.

\*          \*          \*

Mother A.A. (mother) appeals from the juvenile court's order terminating her parental rights to minor child I.V. (minor) following a Welfare and Institutions Code section 366.26 hearing (section .26 hearing).[1] Mother contends the court erred by failing to sua sponte appoint her a guardian ad litem. We disagree and affirm.

STATEMENT OF THE CASE

On August 3, 2024, Senior Social Worker Heather Collins (SSW Collins) sought a protective custody warrant for minor, who was born in May 2024, from mother and alleged father due to concerns about the parents' unresolved mental health issues and mother's present failure to provide medical care for minor. It was reported mother had Tourette's syndrome, bipolar disorder, and schizophrenia. However, she denied having any mental health issues and was unwilling to participate in mental health services. Mother had taken minor to Children's Hospital of Orange County (CHOC) the prior night. After minor was diagnosed with failure to thrive because his weight had dropped from the 20th percentile to the 1.25 percentile, mother removed minor from CHOC against medical advice. CHOC Doctor Thiessen advised SSW Collins minor's condition could become "life-threatening" if he was not readmitted. SSW Collins spoke with the alleged father over the telephone. He stated he has a criminal history and an unresolved mental

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

2

health condition for which he was receiving services. He could not care for minor because he was living at a sober living facility with many roommates. That night, SSW Collins spoke with mother at her residence. Mother made statements about people "'hurting'" her and referred to her residence as "'dangerous.'" In response to SSW Collins's queries, mother stated she would not take minor to CHOC or to a different hospital. The request for a protective custody warrant was granted, and minor placed with his maternal aunt.

On August 6, SSA filed a section 300 petition as to minor, which included allegations of failure to protect, failure to provide and inability to provide regular care due to the parents' mental illness.

The next day, at the detention hearing, the juvenile court appointed the public defender to represent mother. The court found SSA made a prima facie case and ordered minor detained from mother's custody pending further proceedings. During the hearing, mother asked and answered several questions, and was admonished for interjecting several times.

In its September 12, 2024 report for the jurisdiction and disposition hearing, SSA recommended the juvenile court sustain the section 300 petition and declare minor a dependent of the court. SSA reported mother denied the allegations of the petition that she failed to ensure minor receive basic needs including medical care. For reunification services, SSA recommended mother participate in random drug testing, substance abuse treatment, self-help meetings, parenting classes, individual counseling, and mental health services. Mother indicated she was willing to participate in services.

SSA reported that during its investigation, mother made various concerning remarks, including referring to medical staff as "'good guys' and 'bad guys,'" and stating she takes minor to a different doctor each month as to not "'play favorites.'" It also was reported that in 2021, mother caused a disturbance at a gas station based on a hallucination she had overpaid the cashier by $100. In May 2023, she was hospitalized after claiming she was struck in the ribs with a baseball bat, although there was no medical proof. In January 2024, she was placed on a mental health hold after she reported "seeing people hanging by their necks on the walls of her family's home and claimed there were snipers in the vents and peering through the blinds of their balcony." The alleged father and maternal aunt reported mother had mental health issues and was resistant or noncompliant with her medications. Mother, however, denied any mental health issues, stating, "it is all a setup against me." She also expressed skepticism about psychiatric medications, believing they cause harm rather than help. She denied ever experiencing hallucinations or delusions.

At the combined jurisdiction and disposition hearing on September 26, 2024, mother's counsel moved to continue the hearing date because mother was not present. The juvenile court denied mother's request. Counsel objected to SSA's recommendations and requested minor's return to mother's care. The court sustained the petition, declared minor a dependent of the court, adopted the proposed case and visitation plan, and granted mother reunification services. It set the six-month status review hearing for February 27, 2025.

In its report for the six-month status review hearing, SSA recommended terminating mother's reunification services and the rescheduling of a section .26 hearing. Mother had not maintained consistent

4

contact with SSA, and continued to reside with maternal relatives. She also was inconsistent with visitation. Mother continued to deny any mental health issue, and it was unknown whether she was taking any of her prescribed medications. Her progress with reunification services was minimal, and she refused to review and sign the case plan.

At the six-month status review hearing on February 27, 2025, mother's counsel noted mother was not present but had authorized counsel to proceed. Because a paternity test indicated the alleged father was not the biological father and he was not married to mother, the juvenile court excluded him from further proceedings. The hearing was continued to April 24.

At the April 24 hearing, mother's counsel moved to continue the hearing based on mother's absence. The juvenile court denied the continuance motion as lacking good cause. Over counsel's objection, it terminated mother's reunification services and set a section .26 hearing for August 20, 2025. Subsequently, the section .26 hearing was continued to September 22, 2025.

In its section .26 report, SSA recommended terminating mother's parental rights over I.A and selecting adoption as the permanent plan. SSA noted minor had been removed from maternal aunt's care in July 2025, and placed with a caregiver who was willing to adopt. When minor was in the maternal aunt's care, mother did not visit consistently. For example, in March 2025, mother only visited minor twice, with each visit being about 30 minutes. After minor's placement changed, mother did not visit, contact minor on his birthday or call to check in on minor. Mother also did not return phone calls or text messages from SSA about scheduling visits.

In an addendum report, SSA noted that on August 14, 2025, mother texted SSA asking how she could get minor back and if she could have visitation at an SSA office, but mother did not reply to SSA's responsive communications. On August 29, 2025, the maternal grandmother informed SSA mother was hospitalized, but declined to provide the name and address of the hospital.

At the section .26 hearing on September 22, 2025, mother's counsel moved for a continuance to attempt to contact mother and secure her presence, but acknowledged there was "no assurance that [counsel] would be able to secure her presence." The juvenile court denied the motion because a continuance would not be in the best interest of minor. It found minor to be adoptable, terminated parental rights, and selected adoption as minor's permanent plan.

Mother timely appealed.

DISCUSSION

Mother's sole contention on appeal is the juvenile court committed reversible error by failing to appoint a guardian ad litem (GAL) for her. We disagree.

Code of Civil Procedure section 372, subdivision (a)(2)(A) provides: "A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the minor, person who lacks legal capacity to make decisions, or person for whom a conservator has been appointed, notwithstanding that the person may have a guardian or conservator of the estate and may have appeared by the guardian or conservator of the estate." The guardian ad litem "shall have power, with the approval of the court in which the action or proceeding is

6

pending, to compromise the same, to agree to the order or judgment to be entered therein for or against the [party], and to satisfy any judgment or order in favor of the [party] or release or discharge any claim of the [party] pursuant to that compromise." (Code Civ. Proc., § 372, subd. (a)(3).) A court may on its own motion appoint a guardian ad litem for a party. (Code Civ. Proc., § 373.)

"In a dependency case, a parent who is mentally incompetent must appear by a guardian ad litem appointed by the court. [Citations.] The test is whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case. [Citations.] The effect of the guardian ad litem's appointment is to transfer direction and control of the litigation from the parent to the guardian ad litem, who may waive the parent's right to a contested hearing." (*In re James F.* (2008) 42 Cal.4th 901, 910.) "[W]hen the trial court already has knowledge of the [party's] incompetency, the trial court has an obligation to appoint a guardian ad litem sua sponte." (*In re Lisa M.* (1986) 177 Cal.App.3d 915, 919.) Any "error in the process used for appointment of a guardian ad litem for a parent in a dependency proceeding is a form of trial error that is amenable to harmless error analysis." (*In re James F.*, at p. 919, fn. omitted.) "[T]he juvenile court's error may be deemed harmless if the outcome of the review hearings and the termination hearing were not affected by the violation." (*In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 93.)

Here, although mother has documented mental illnesses and recently suffered from delusions and paranoia, the record does not establish that mother lacked capacity to understand the nature or consequences of the dependency proceedings or to assist her counsel. Her interactions with SSA, as reflected in the reports, show she understood the allegations against her

7

and her later communications evidenced she was aware she lost custody of minor and had to take remedial steps to reunify. Mother's interactions at the detention hearing also show she was aware of the nature and consequences of the proceedings. Although she interrupted the court and counsel, her interruptions were related to the topics being discussed. For example, she sought to defend her actions by stating she took minor to every appointment and had everything ready for him. She asserted, "I did everything right." Additionally, there is no evidence mother lacked capacity to assist her attorney. Appointed counsel never stated mother could not assist. Rather, the limited record indicates mother offered her opinion on legal issues, including her opinion that the paternity test was incorrect. In sum, the juvenile court reasonably concluded an appointment of a guardian ad litem was not required. (Cf. *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368 ["the trial court did not abuse its discretion in failing to exercise its express power under section 373 of the Code of Civil Procedure to act sua sponte to appoint a guardian ad litem for father" where "[it is clear father understood the nature of the proceedings against him, was able to participate meaningfully in such proceedings and cooperate with his counsel in representing his interests"]; *In re R. S.* (1985) 167 Cal.App.3d 946, 979–980 [finding no abuse of discretion for juvenile court's failure to sua sponte appoint guardian ad litem for mother because "[n]otwithstanding [mother's] documented mild [intellectual disability] and her dependent personality disorder, the record here establishes that [mother] did understand the nature of the proceedings against her and was able to meaningfully participate in those proceedings and to cooperate with her trial counsel in representing her interest"].)

Moreover, mother has not shown the failure to appoint a guardian ad litem would affect the "outcome of the review hearings and the termination hearing." (*In re Esmeralda S.*, *supra*, 165 Cal.App.4th at p. 93.) Mother argues a guardian ad litem would have been a better advocate because the guardian ad litem "would have requested a psychological evaluation," "directed [m]other's counsel to subpoena [m]other's mental health records," and "could advocate for [m]other to take or be forced to take medication that she so desperately needed." Here, mother came to the attention of SSA because she refused to provide medical care for minor based on her paranoid delusions. Her denial of suffering from any mental illness and noncompliance with taking psychiatric medication resulted in the loss of custody and ultimately termination of parental rights. It is clear the outcome of the review hearings and termination hearing would not change without, at a minimum, mother's compliance with mental illness treatment. The record indicates that her family, boyfriend, and social workers all encouraged her to address her mental illnesses. We are not convinced that a guardian ad litem, likely a stranger whose powers are expressly limited to legal choices related to the dependency proceedings, would be more persuasive to mother about accepting her mental illness diagnoses and complying with treatment for her mental illnesses. In sum, any error in failing to appoint a guardian ad litem was harmless.

DISPOSITION

The order terminating parental rights is affirmed.


DELANEY, J.


WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.