Filed 9/28/23  In re Jocelyn F. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOCELYN F., a Person Coming Under the Juvenile Court Law. | B327777 (Los Angeles County Super. Ct. No. 21CCJP00040A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CHRISTOPHER F., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Lori N. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Christopher F. (father) challenges the juvenile court orders (1) terminating family reunification services, and (2) terminating his parental rights.  His challenges ignore the standard of review, or are otherwise unsupported by the law or the record.  Because they all lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Jocelyn F. was born in August 2011 to father and Janaye K. (mother).  When Jocelyn was two years old, the family split—with father settling in Iowa, and Jocelyn and mother eventually landing in California.  Between 2013 and the end of 2020, father had minimal involvement in Jocelyn's life:  His last in-person visit was in 2017, and he only rarely contacted her via phone or email.

In 2019 and again in late 2020, mother's then-boyfriend sexually abused Jocelyn.  These repeated incidents of abuse caused Jocelyn trauma.

In January 2021, Jocelyn was placed with the maternal grandparents.

## II.    Procedural Background

Although mother successfully completed a stint of voluntary family maintenance programs following the 2019 sexual abuse, the Los Angeles Department of Children and Family Services (the Department)—following the late 2020 sexual abuse—filed a petition asking the juvenile court to exert dependency jurisdiction over Jocelyn, as pertinent here, due to mother's failure to protect Jocelyn from sexual abuse pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (d).[1]  The petition did not allege any misfeasance or nonfeasance by father.

The juvenile court exerted jurisdiction over Jocelyn in March 2021.

In late April 2021, the juvenile court held the dispositional hearing.  The court removed Jocelyn from father and mother, and ordered the Department to provide reunification services.  As part of his case plan, the juvenile court ordered father to (1) attend sexual abuse awareness classes; (2) attend parenting classes; (3) have monitored visitation with Jocelyn six hours a week; and (4) participate in conjoint counseling with Jocelyn, if Jocelyn's therapist so recommended.

The Department provided father 18 months of reunification services—from April 2021 through August 2022.  During that period, the Department had regular contact with father, usually on a monthly basis.  The Department sent father referrals for the sexual abuse awareness and parenting classes in Iowa, where father continued to live; father signed up for and attended parenting classes, but never signed up for any sexual abuse

---

1      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

awareness class. The Department arranged regular video and telephone visits, although father was inconsistent in attending and the quality of visits was not high: Jocelyn had to carry most of the conversations as father did not engage with Jocelyn, and father and Jocelyn only discussed "superficial" matters rather than matters of import in Jocelyn's life (such as school, her health, or her hobbies). Father made two in-person visits during this period. Jocelyn attended individual counseling and therapy and also participated in monthly conjoint therapy with mother until August 2022; however, Jocelyn and father never advanced to conjoint therapy because Jocelyn never felt "ready" for it and the record does not indicate that Jocelyn's therapist recommended conjoint therapy with father should begin. At the end of the 18-month period, Jocelyn wrote a letter to the court explaining that she did not feel safe with father or mother.

At a contested permanency planning hearing in January 2023, the juvenile court rejected father's request to apply the beneficial parent-child exception and terminated father's parental rights over Jocelyn.

Father filed this timely appeal.

## DISCUSSION

## I. Challenges to the Termination of Reunification

Although a parent's challenge to the termination of reunification services at a status review hearing must procedurally be raised through a writ petition from the status review order rather than following any subsequent termination of parental rights, this procedural rule applies only if the juvenile court advises that parent of his right to seek writ review orally *or* via first-class mail if the parent is not present. (§ 366.26, subd. (*l*); *In re Cathina W.* (1998) 68 Cal.App.4th 716, 721-724.)

4

Because the juvenile court did not orally advise father of his right to seek writ review at the 18-month hearing and because the notice the court mailed had a one-letter typo in father's street address ("Start Avenue" versus "Starr Avenue"), the parties concede that the procedural rule does not govern and that father may now challenge two aspects of the order terminating reunification services.

### A. *Challenge to the finding of "detriment"*

When a juvenile court terminates reunification services at the 18-month status review hearing, the court must return the child to the parent's custody unless the court finds, by a preponderance of the evidence, that doing so "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1).) We review a finding of detriment for substantial evidence. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401.)

Substantial evidence supports the juvenile court's finding that returning Jocelyn to father's custody would be detrimental to her emotional well-being. To begin, this case triggers the statutory presumption of detriment because father's failure to start the sexual abuse awareness classes means he did not "participate regularly and make substantive progress in court-ordered treatment programs." (§ 366.22., subd. (a)(1).)[2] Apart

---

[2] Father argues that the Department never addressed how his participation in sexual abuse awareness classes "would have changed his relationship with Jocelyn" and that the sexual abuse awareness classes were "not a necessary component of the case plan" because they were not "tailored to the particular needs of the family." But this is nothing more than an impermissible collateral attack on an element of his case plan that he never previously challenged; it is too late to attack it now. (E.g., *Steve*

from the presumption, substantial evidence otherwise supports the finding that moving Jocelyn to Iowa to live with her father would cause detriment to her emotional well-being because (1) Jocelyn suffered trauma when she was sexually abused by mother's boyfriend; (2) Jocelyn feels safe with—and has a close bond with—her maternal grandparents who have been caring for her since January 2021; and (3) as the juvenile court pointed out, pulling Jocelyn from "the place where she has the greatest measure of support" and moving her across the country to live with an adult man with whom she has almost no relationship (because father rarely visited her and has had only "superficial" conversations with her) will exacerbate her trauma and harm her emotional well-being.  (§ 366.22, subd. (a)(1) [relevant question is whether "the return of the child" to the parent would create the risk of detriment, not whether the parent's presence would be detrimental]; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425-1426 ["detriment need not be related to parental action" but can relate to removal from "support[] and security"]; *In re A.C.* (2020) 54 Cal.App.5th 38, 46 ["court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being"].)

Father's arguments to the contrary lack merit.  Father cites other cases with stronger evidence of detriment, but those cases did not purport to define the minima for "detriment."  Father argues that Jocelyn never testified and that Jocelyn's therapist did not provide input, but our task is to review the sufficiency of

---

*J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811.)  What is more, the court ordered sexual abuse awareness classes to help father understand Jocelyn's trauma in order to enable him to deal with that trauma should they reunify.

the evidence that *was* presented, not examine whether the Department could have presented more or different evidence. And even though Jocelyn did not testify, she expressed her feelings to the court by reading a statement in which she described only seeing her father twice between ages two and 10 and by submitting a letter in which she described her "nightmares and anxiety about being taken away from my grandma and grandpa where I feel safe." Relatedly, father argues that conjoint therapy would not have caused Jocelyn emotional harm or strained her relationship with father, but this argument seems to examine the detriment *from conjoint therapy* where the pertinent question is the detriment *from placing her with father*. Father contends that neither a parent's absence from a child's life nor a child's strongly expressed wishes not to be placed with a parent are sufficient evidence of detriment by themselves (see *In re Adam H.* (2019) 43 Cal.App.5th 27, 33 [lack of relationship not enough to show "detriment" under section 361.2]; *In re K.B.* (2015) 239 Cal.App.4th 972, 981 [same]). Even if we ignore that the cases father cites deal with assessing "detriment" under section 361.2 (which applies at the time of initial removal rather than at the termination of reunification), here the evidence involves *both* of these factors and more— namely, the baseline trauma that Jocelyn now suffers, which will be exacerbated by moving Jocelyn from the "safe" place she currently lives to a place where she strongly expressed she feels less safe. Father says his absence of a relationship with Jocelyn is not his fault: It is mother's fault for not letting Jocelyn fly to Iowa by herself to visit him between 2013 and 2019 (when she was two to eight years old); it is the airlines' fault for making air travel so expensive; and it is maternal grandmother's fault for

not re-arranging her and Jocelyn's schedules to better accommodate video visits with father since this case started. Father's argument ignores the contrary evidence that we must credit when examining substantial evidence, and it ignores that the law does not compel caregivers and children to re-arrange their lives for a parent. Father asserts that the juvenile court did not explain the "factual basis" for its finding of detriment as required by section 366.22, subdivision (a)(2); even if we accept father's argument and overlook the juvenile court's frequent explanations that the risk of detriment here stems from uprooting Jocelyn from the "stability" and solid "foundation" of her current placement, we can and do readily infer the factual basis from the record. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 83-84.) And father lastly complains that any detriment to Jocelyn exists solely because the Department did not offer him reasonable reunification services that would have eliminated the detriment attendant to placing Jocelyn with him; we discuss—and reject—this last argument next.

**B.** ***Challenge to the finding of "reasonable" reunification services***

At each status review hearing (including the 18-month status review hearing), a juvenile court must assess whether, by clear and convincing evidence, the relevant social services agency (here, the Department) has made "reasonable" efforts to implement the case plan defined for the parent at the outset of reunification services (§§ 366.22, subd. (a)(3), 366, subd. (a)(1)(B)); unless the Department provides a parent reasonable reunification services, the court may not initiate a permanency planning hearing (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594-597). An agency provides "reasonable"

8

services when it (1) "maintain[s] reasonable contact with the parent[] during the course of the . . . plan"; (2) "offer[s] services designed to remedy" the problems identified in the parent's case plan; and (3) makes "reasonable efforts to assist the parent[] in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics omitted.) "'[R]easonable efforts'" are "good faith" efforts that are "'reasonable under the circumstances'" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1166, 1164, italics omitted; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 254); they "need not be" ideal or "perfect" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 (*Alvin R.*)). We review a juvenile court's finding that the Department has provided reasonable reunification services, including the three subsidiary aspects enumerated above, for substantial evidence, asking whether the record supports such a finding by clear and convincing evidence. (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238-1239, disapproved on other grounds by *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631 , fn. 8; *In re V.L.* (2020) 54 Cal.App.5th 147, 149.)

Substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that the Department provided reasonable reunification services. The Department kept in contact with father on a mostly monthly basis. The Department provided him referrals for local parenting classes and supplemental lists of referrals for sexual abuse awareness classes, and even reached out to its Iowa counterpart when father expressed difficulty lining up a sexual abuse awareness class; it arranged for Jocelyn to participate in individual therapy; and it orchestrated video and telephone visits three times a week. Although father did not ever sign up for the sexual abuse

9

awareness class, an agency's provision of services is not unreasonable merely because the agency did not "force [the] parent to participate in [the offered] services" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233).

Father raises what boils down to one procedural and one substantive challenge to the juvenile court's finding. Procedurally, father objects that the court never made an *express* finding regarding the reasonableness of the Department's efforts. This is true, but irrelevant because we may imply such a finding (particularly where, as here, the parent did not alert the juvenile court to its procedural misstep at that time). (See *Jose O. v. Superior Court* (2008) 169 Cal.App.4th 703, 708 ["reviewing court may imply a finding if substantial evidence supports it"].) Substantively, father urges that the Department's efforts were unreasonable because (1) the Department did not better assist him to "achieve regular visitation," as it did not force the maternal grandparents and Jocelyn to rearrange their schedules to better accommodate *father*'s schedule; and (2) it did not compel Jocelyn to participate in conjoint counseling with him. By focusing only on alleged deficiencies, father's argument ignores all of the Department's other efforts; because our task is to assess whether the Department's *overall* efforts are reasonable, arguments that merely point to deficiencies without discussing how they affect the overall reasonableness of the Department's efforts by definition lead to the conclusion that the agency's efforts are unreasonable, and are accordingly myopic and unhelpful. Further, the Department's efforts in these two regards were not unreasonable. Father cites no authority for the proposition that all other participants in a juvenile dependency case must re-arrange their schedules for the parent (particularly

10

where, as here, there is nothing in the record to indicate that father ever contemporaneously requested such accommodation). The juvenile court conditioned conjoint counseling on Jocelyn's therapist's recommendation that such counseling was appropriate; as father concedes, such a recommendation is nowhere in the record. (Contra *Alvin R.*, *supra*, 108 Cal.App.4th at p. 973 [services not reasonable when order for conjoint therapy conditioned on child first attending individual therapy and Department never arranged individual therapy]; *In re Mark L.* (2001) 94 Cal.App.4th 573, 578-579, 581, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 [finding error when juvenile court barred therapist from testifying, and Department from providing any information from therapist, about the possibility of starting conjoint therapy]; see *In re A.C.* (2017) 13 Cal.App.5th 661, 673 [where record is silent, it is appellant's burden to show error].) Father suggests that the court was inappropriately deferring to Jocelyn's wishes because the Department repeatedly noted that Jocelyn did not feel "ready" for conjoint counseling, but nothing indicates that Jocelyn's view was inconsistent with her therapist's.

## II. Challenge to Indian Child Welfare Act (ICWA) Finding

Under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; § 224 et seq.), (1) the Department and the juvenile court are required to make an initial inquiry into whether Jocelyn might be an "Indian child"; (2) the Department must conduct a further inquiry if it has "reason to believe" she might be; and (3) the Department must formally notify any pertinent Indian tribes, the Bureau of Indian Affairs (BIA) and the Secretary of the Interior if it has "reason to *know*" she might be. (§§ 224.2, subds. (a)-(e),

11

224.3, subd. (a), italics added.) Father does not dispute that the Department and juvenile court conducted a proper initial inquiry, that the Department thereafter regularly asked father's and mother's relatives about possible Indian heritage, or that the court repeatedly asked the parents and any relatives who attended proceedings about possible Indian heritage. Those inquiries indicated that father's mother (the paternal grandmother) was a member of a Sioux tribe, which prompted the Department to send informal notices to Sioux tribes listing information about the paternal grandmother and father; 10 tribes responded that Jocelyn was neither an "Indian child" nor eligible for tribal membership. On appeal, father urges that this inquiry was deficient because the informal notice sent by the Department (1) listed an incorrect birthdate for father (it was off by two weeks) and did not list his middle name, and (2) did not list the paternal grandmother's tribal membership number in the correct box on the ICWA-030 form (even though the number was included in the attached declaration from the social worker).[3] We evaluate a juvenile court's ICWA finding (and hence its implicit finding regarding the adequacy of Department's inquiry underlying that finding) for substantial evidence. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1079-1080.)

Substantial evidence supports the juvenile court's implicit finding that the Department complied with its inquiry and notice duties under ICWA. Where, as here, an agency has "reason to

_____

[3] Father also asserts that the photocopy of paternal grandmother's tribal membership card that the Department attached to the ICWA-030 form does not contain any "legible enrollment number." The semi-legible number on that photocopy appears to be a contact phone number.

believe" that a child may be an Indian child, it is to contact the pertinent tribes (as well as the BIA) informally to ascertain whether formal notice is required. (§ 224.2, subd. (e)(2)(C).) The Department did that. Father's complaint that the Department's informal notice did not contain complete information about *father* does not undermine the adequacy of that notice, as father repeatedly stated that *he* was not a member of any Sioux tribe. Father's complaint about the omission of a tribal membership number for the paternal grandmother from the correct box on the ICWA-030 form also does not undermine the adequacy of that informal notice, as father does not contend that any of the other biographical information about her—including her name, date of birth, place of birth, and the like—was incorrect or otherwise inadequate for the tribes to ascertain her membership. Father points to cases faulting social services agencies for not providing *all* information in notices to tribes, but those cases deal with what must be included in *formal* notice—not in *informal* notice conducted as part of the duty to further inquire—and in any event, father concedes that the notice included paternal grandmother's tribal membership number, albeit "in small type" in the declaration. (Cf. *In re Y.W.* (2021) 70 Cal.App.5th 542, 556-557.) Indeed, the Department, as part of its duty of further inquiry, also contacted a specialist in Sioux tribal membership; contrary to what father suggests, its failure to document any follow-up with that specialist does not retroactively invalidate its otherwise adequate inquiry. What is more, because the Department's further inquiry did not unearth a "reason to know" Jocelyn was an Indian child (because, among other things, neither she nor father were tribal members) (§ 224.2, subd. (d)

13

[defining "reason to know"]), the Department was never required to give formal notice.

And although unnecessary, any deficiency in the Department's inquiry is also harmless because father has provided no reason to believe that remedying the omissions he identifies would lead to a reason to know Jocelyn is an Indian child. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 774, review granted Sept. 21, 2022, S275578.)

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

14